Our final case for today, now this afternoon, is Scottsdale Insurance Company v. Columbia Insurance Group, Inc. So we should have Mr. Van Rieden and Mr. Schwartz. Yes, Your Honor. Mr. Van Rieden here. And yes, Your Honor. Jonathan Schwartz is also on the line. Excellent. All right. Mr. Van Rieden, then you may proceed. Thank you, Your Honor. Good afternoon now. May it please the Court. My name is James Van Rieden, and I represent the Appellant Defendant Columbia Insurance Group. This matter is before the Court on appeal of a final judgment from the United States District Court for the Northern District of Illinois. Here, Columbia has insured TDH Mechanical and the insureds of the appellee plaintiff, Scottsdale, which are Prairie Management and Development and Rockwell Properties, entered into an agreement with TDH to provide HVAC services on a particular construction project. As is so frequent in these situations, Prairie Management, the general contractor, and Rockwell, the owner of the project, required that TDH provide commercial liability insurance and that they be named additional insureds on that insurance in certain circumstances. So under the Columbia insurance policy, which TDH procured, coverage was available for Prairie and to liability brought against Prairie and Rockwell arising out of TDH's ongoing operation, arising out of TDH's work or acts or omissions on the project. So let me ask you a question about that. I want to explore a little bit what this arising out of means, because this, to me, looks like one of those very common cases where the injured man is an employee of TDH, they're doing the HVAC work, and there's this unprotected space and he very unfortunately falls down, but he's not going to be bringing this lawsuit against TDH, probably because of workers' compensation laws, but the fact that the general contractor and the owner and so on are implicated surely is something that arises out of TDH's work. It really fundamentally depends on TDH's work, even though they don't happen to be a named defendant. Certainly, Your Honor, and the mere fact that they are there is what much of the case law cites as reasoning for coverage. I think in the underlying case, that's certainly a reason for a third-party complaint by Prairie and Rockwell against TDH. However, in the case, in the policy, there are limitations, and those limitations prevent additional insured coverage under the policy for the sole negligence of Prairie and Rockwell. Do you see it that way? The district court looked a little bit at the third-party complaints as well, and I don't think saw this as a sole negligence of Rockwell and the other people, right? Prairie, yes. They didn't see it as a sole negligence situation. It's just that the way claims get asserted might mislead you into thinking that. At the district court, Your Honor, Judge Lee applied what is the appropriate test in Illinois in trying to determine whether there was at least potential coverage under the allegations made in the underlying complaint when compared to the policy language. Judge Lee did, as he's allowed to do, look towards the third-party complaints in order to come to that determination. However, we would argue that the third-party complaints really do nothing more than pay lip service to what all co-defendants do in these types of cases, and that's try to spread their liability as thinly as possible by naming every other co-defendant in a contribution third-party cross-claim or complaint, and that included TDH here. And though that analysis brought Judge Lee to see that there was a potential for coverage here, and that is the test in Illinois, what Columbia argues is that at some point there must be a limit on that test. If not, then in every circumstance where an employee of a subcontractor in a similar situation is hurt, or in every circumstance where allegations against a general contractor of failure to monitor or supervise, under policies like this, which are so prevalent, there would be a duty to defend just for the mere fact that the subcontractor was on site, which obviously they are. They were part of the contract. Yeah, but at least in this case, the facts really arise directly out of the subcontractor's work. I can imagine situations where the subcontractor might be, you know, doing carpentry in a completely different area of the work site and not the HVAC. In other words, things that are just not so closely linked, but here, this case is all about what was going on with the subcontractor. Certainly, the case is all about the injured party, and really the only connection in the TDH is the fact that TDH was the employer of the injured party. And the problem here is that if all it takes for a finding of coverage under policies such as this is simply the fact that the subcontractors employed the injured party, that really swallows the limitations that are present in these types of policies. The policy does not state that Prairie and Rockwell will be provided with additional insured coverage for defense in each and every event where an employee of TDH was injured. Rather, it states only that defense and indemnity coverage would be provided in the event that there is some allegation that an act, mission, or work of TDH caused that liability, and that's not what we have here. The allegations and the underlying complaint really direct focus upon breaches of Prairie and Rockwell's duties do not allege that TDH really had any involvement with the accident, other than the fact that TDH employed the injured party. If that was enough, frankly, your honor, then the limitations in these policies, which are so prevalent in the construction industry, would be swallowed. So as we've discussed now, your honor, eventually there was an accident and an underlying complaint was filed against Prairie and Rockwell. As we know, because we're here today, the tender was denied for the reasons I've just discussed. And essentially, what Scottsdale's argument here is, and we've touched on this, is that the underlying complaint has allegations that Prairie and Rockwell failed to monitor or supervise the subcontractors. Okay, it's at least possible then by that statement that a subcontractor was liable for the plaintiff's injuries. TDH happened to be one of the many subcontractors on the job, so it's at least possible that TDH was liable. There's just several levels of speculation involved in that analysis, and when it's allowed, it's really hard to imagine any circumstance under this policy language where there would not be additional insured coverage for Prairie and Rockwell. It's just not what was contracted for, and it's not what the policy states, and it would swallow the limitations of that policy. There could be... Okay, if you want to save a bit for rebuttal, you're down to about two minutes. Thank you, your honor. Yes, I will save the remainder of my time for rebuttal. Thank you. Thank you. Mr. Schwartz. Good afternoon, your honor, and may it please the court. My name is Jonathan Schwartz, and I am counsel for Apple Leaf Scottsdale Insurance Company. Columbia has a duty to defend Rockwell and Prairie for two main reasons. First, the language of Guzman's personal injury complaint seeks to hold Rockwell and Prairie liable for the negligent conduct of subcontractors at the worksite, and even more specifically, for unnamed subcontractors allowing an uncovered hole to exist through which Guzman fell. And we know TDH was a subcontractor at the site working for Rockwell and Prairie. Second reason is that co-defendants' third-party complaints clearly establish the possibility that Rockwell and Prairie's misconduct may have been the real cause of Guzman's injuries. Columbia misunderstands the duty to defend standard in Illinois. The duty to defend standard follows the possible outcomes based on what is alleged in the complaint. The insurer must acknowledge and construe in its additional insurance favor the reasonable inferences, so any vague references have to favor the additional insured. There is also ample case law that direct negligence allegations against an additional insured do not absolve an insurer of the duty to defend. And just to be clear, this case is exclusively about the duty to defend. Judge Lee turned down the request for a ruling on duty to indemnify. Yes, Your Honor, and correctly so. The duty to indemnify is not presently ripe. The critical allegation here is that Rockwell and Prairie failed to supervise or monitor subcontractors. And an even more important allegation is that those subcontractors were then allowed to engage in the unsafe practice of not covering or guarding the unmarked opening in the floor. That is of paramount significance since Guzman fell through such an opening in the floor. Counsel has argued that this should fall under the auspices of the sole negligence limitation. But I fail to see why Rockwell and Prairie cannot be held responsible for TDH's misconduct. Because if they can be, then Columbia's duty to defend is necessarily triggered. There is also, as Your Honor pointed out, no need for the complaint to spell out the negligence of the employer, who the claimant has no incentive to sue anyway. Hinting at it is enough. And that we would we started in our briefs to core construction and blinderman construction, both of which fully support that proposition. Therefore, it does not matter here whether TDH is named as a defendant or if Guzman levied allegations against it. The underlying complaint has the potential to hold Rockwell and Prairie liable for Guzman's injuries, which have been caused by TDH's work at the construction site for Rockwell and Prairie. Counsel argued that the interpretation that Scottsdale and Judge Lee have afforded the contract, I would surmise that instead, what was contracted for can be read through the language of the policy as sold. So the question your opponent asks, though, is what words in the English language would be enough to show that this situation where an employee is injured on a work site, you know, what excludes or what could exclude that sort of situation from coverage as an additional insured? That would be a good question for an underwriter. People write contracts and there needs to, you know, and you want to, of course, enforce the coverage that was contracted for because that's what the pricing is based on and all the rest of it. But they think that you're reading this so broadly is to mean that there just is always coverage because these scenarios are so common. Well, I think the counsel's question is inept because while it's possible for his carrier to come up with policy language that would potentially exclude a scenario such as this, what we do know is that in this particular scenario that there are allegations that subcontractors at the work site who Rockwell and Prairie are responsible allowed for an unsafe practice of not covering or guarding unmarked openings in the floor. And we also know that the employer of Guzman, TDH, was working in that area. And as your is apparent between the work site or the work area and the injury, if the name insured was working in a completely different area of the site and its employee happens to wander over and it has nothing to do with his work, then I think there's a very good argument that there's no coverage, even a due to defend for that type of allegation, for that type of scenario. But where the employee is injured in the exact area of the work site where his employer and co-employees are working, I don't see why the insurer should be griping about it being unfair that they should have to cover such a scenario where they sold a blanket endorsement that allows coverage for initial insured as long as it's possible, again, the due to defend being whether it's possible. Whether it's possible that the bodily injury was caused in whole or even in part by the name insured's work arising out of its ongoing operations performed for the initial insured. They're the ones who sold the broad coverage. If they wanted to limit it, they can do so. They can also exclude things. But based on the policy language as sold, they bargained for this type of coverage. Finally, your honors, I would say that Columbia's initial insured language is awfully broad. It only requires the possibility that the name insured's conduct either cause in part the plaintiff's injuries. The nexus here is the name insured's work for the initial insured. And if the employee was working for the name insured who was working for the additional insured at the site, I believe that's a reasonable line of demarcation. So with that said, Scottsdale insurance would contend that Judge Lee's grant of judgment in favor of Scottsdale should be affirmed. All right. At this time. Thank you. Thank you very much then. Anything further, Mr. Van Reden? Yes, your honor. The policy language that is present here has a clear limitation in that it does not provide additional insured coverage for the sole negligence of Prairie or Rockwell. At some point, your honor, the drafter of the policy has to put the pin down. Not every scenario can be drafted out into each policy. When that clear language is applied to these facts and the underlying complaint, there are simply no allegations with any meaningful connection to TDH other than the fact that TDH was the employer of the injured party. If that's all it takes, and I think that's what opposing counsel is arguing, is that simply by employing the individual who got hurt in the area that's complained of, that's enough to trigger coverage. If that is all it takes, then that avoids the intent of these parties in coming to this policy language, and it totally swallows that limitation in the policy. And that's the point to drive home here, and it's addressed by an Illinois court, the Illinois Appellate Court and National Fire Insurance, apart for the Walsh Construction Company, and that there's got to be something more than just a vague allegation that a subcontractor was present on the site or that a subcontractor employed the eventually injured party to trigger coverage under these types of policies. If more is not required, then there will always be coverage required under these policies, and that's clearly not the intent of the parties and clearly in direct opposition to what the straightforward policy language states. And on that note, Your Honors, Columbia would ask that the decision by Judge Lee at the District Court be reversed. Thank you very much for your time. All right, well thank you. Thanks as well to Mr. Schwartz. The court will take this case under advisement, and we will be in recess.